**RECORD HEAD CORPORATION,**
Plaintiff,

v.

**Michael SACHEN, Individually and in his official capacity as Attorney for the City of West Allis, Wisconsin; Floyd Andrich, Individually and in his official capacity as Chief of Police of the City of West Allis, Wisconsin; and the following individually and in their official capacity as Aldermen and members of the Common Council of the City of West Allis, Wisconsin: John Turck, Charles Wolf, Lester Trudell, Jr., Ralph West, Steve Barczak, Richard Germershausen, Norbert Boeder, Thomas Lajsic, Fred Cashmore and James Sengstock, Defendants.**

Civ. A. No. 80–C–639.

United States District Court,
E. D. Wisconsin.

Sept. 30, 1980.

Paul E. Sicula, Atinsky, Kahn, Sicula & Teper, Milwaukee, Wis., for plaintiffs.

Curt R. Meitz, Asst. City Atty., West Allis, Wis., for defendants.

## DECISION and ORDER

TERENCE T. EVANS, District Judge.

This action for declaratory and injunctive relief challenges the constitutionality of a recently enacted municipal ordinance. The ordinance, No. 4812, created § 6.026 of the Revised Municipal Code of West Allis. It became effective on July 30, 1980.

The ordinance prohibits the following: § 6.026(3)

(a) It shall be unlawful for any person, firm or corporation to sell, offer to sell, dispense, give away or display any instrument, simulated controlled substance or simulated drug in or upon any premises which:

(i) Are premises open to minors, unless the instruments, simulated controlled substances or simulated drugs are kept in such part of the premises that is not open to minors or to which minors do not have access, unless accompanied by a parent or legal guardian.

(ii) Are premises in close proximity to a school.

Record Head Corporation operates a business in West Allis. Its business arguably falls within the proscribed purview of the ordinance and West Allis intends to enforce the ordinance against it.

At a hearing on August 1, 1980, West Allis agreed not to enforce the ordinance until its constitutionality was tested in this court. Its action mooted the plaintiff's request for a restraining order and permitted an expedited briefing schedule on the merits.

■ The jurisdiction of this court has not been challenged. Despite the lack of challenge, the court specifically notes the presence of its jurisdictional requirements and the inapplicability of abstention to the issue at hand. With the filing of the briefs, the matter is ripe for a decision on the merits of the controversy.

Section 6.026(2)(d) of the ordinance in question defines "instrument" as "a device designed for use or intended for use in ingesting, smoking, administering or preparing any controlled substance." The ordinance lists five factors to be considered in determining whether an item constitutes an "instrument":

(i) Whether a person or business establishment is a licensed distributor or dealer of tobacco products under Chapter 139 of the Wisconsin Statutes.

(ii) Expert opinion as to the principal use of the devices, articles or contrivances claimed to be instruments.

(iii) The total business of a person or business establishment and the types of devices, articles, contrivances or items involved in the business.

(iv) National and local advertising concerning the use of devices, articles or contrivances claimed to be instruments.

(v) Advertising concerning the nature of the business establishment.

The seller's intent determines whether the instrument has been "intended for use" in an unlawful manner. § 6.026(2)(d).

I

■ If the unrestricted pursuit of a business adversely affects the public health, safety, morals or general welfare, a munici-

pality may legitimately exercise its police power to regulate that business. *Nebbia v. New York*, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934). A statute enacted pursuant to the police power is presumed valid. *McGowan v. Maryland*, 366 U.S. 420, 425–6, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). Without question, therefore, West Allis may legitimately seek to curb drug use among its children. It has done so by enacting this ordinance aimed at "drug paraphernalia" and directed toward the plaintiff, an operator of what is commonly called a "head shop." However, "more is required of legislation by the Due Process Clause than merely a permissible goal. It is also a requirement that '. . . the means selected shall have a real and substantial relation to the object sought to be attained.'" *Nebbia, supra*, at 525, 54 S.Ct. at 510. The question is whether West Allis may ban the sale of items which have both legal and illegal uses, especially if the seller "intended" the items for illegal use but did not himself use them illegally.

Similar ordinances banning the sale of "drug paraphernalia" have spawned lawsuits across the country. The courts have differed as to their constitutionality, but cases involving ordinances with language like that in Ordinance No. 4812–defining "instruments" or "paraphernalia" as devices "designed for use or intended for use" in ingesting, smoking, administering or preparing any controlled substance–have usually been declared void for vagueness.[1] A vague ordinance violates the right to due process guaranteed in the Fifth and Fourteenth Amendments to the U.S. Constitution. As the U.S. Supreme Court has stated:

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws often offend several important values. First, because we assume that a man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned v. City of Rockford*, 408 U.S. 104, 108–9, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972).

*Parma* involved an ordinance that the court declared unconstitutionally vague yet, in effect, rewrote in order to pass constitutional muster. Although the court in *Parma* saved the ordinance by using judicial surgery, enforcement of the rewritten statute has been stayed by the Sixth Circuit pending its review of the decision. The vitality of *Tobacco Road* was called into question by *Music Stop*, a contrary decision handed down 10 months later in the same district. *Overland Park* involved an ordinance identical to Ordinance No. 4812; however, it was based on Kansas rather than federal law, and in any event, its reasoning is not persuasive. An ordinance regulating, *not* banning, the sale of drug paraphernalia was upheld in *The Flipside, Hoffman Estates, Inc. v. Village of Hoffman Estates*, 485 F.Supp. 400 (N.D.Ill. 1980). That ordinance differed entirely from those challenged in the other cases, and specifically "recognized that such items are legal retail items and that their sale cannot be banned." *Id.*, at 403.

---

1. *Geiger v. City of Eagan*, 618 F.2d 26 (8 Cir. 1980); *Magnani v. City of Ames*, 493 F.Supp. 1003 (S.D.Iowa, 1980); *Knoedler v. Roxbury Township*, 485 F.Supp. 990 (D.N.J.1980); *Smith v. Roark*, No. 80 21110 (S.D.Va., 5/13/80); *Music Stop, Inc. v. City of Ferndale*, 488 F.Supp. 390 (E.D.Mich.1980); *Weingart v. Town of Oyster Bay*, No. 79 C 2932 (E.D.N.Y., 12/17/79); *Record Museum v. Lawrence Township*, 481 F.Supp. 768 (D.N.J.1979); *Santilli v. Hamilton Township*, Civ. No. 79 1301 (D.N.J., 6/1/79); *Riddle v. Clack*, No. CA 3 77 0525 D (N.D.Tex., 8/25/77). *See also Bambu Sales, Inc. v. Gibson*, 474 F.Supp. 1297 (D.N.J.1979) (void for overbreadth). *Contra, World Imports, Inc. v. Woodbridge Township*, 493 F.Supp. 428 (D.N.J., 1980); *Record Revolution No. 6, Inc. v. City of Parma*, 492 F.2d 1157 (N.D.Ohio, 1980); *Tobacco Road v. City of Novi*, 490 F.2d 537 (E.D.Mich., 1979); *Cardarella v. City of Overland Park*, No. 86246 (D.C. Johnson Cty., Kan., 2/8/80).

In *Tobacco Road v. City of Novi*, 490 F.Supp. 537 (E.D.Mich., 1979), relied on by West Allis, the district court quoted *McGowan*, which involved a statute that exempted from Sunday closing laws retail sales at beaches and amusement parks. In *McGowan*, the court observed:

> "We believe that *business people* of ordinary intelligence in the position of appellant's employer would be able to know what exceptions are encompassed by the statute either as a matter of ordinary commercial knowledge or by simply making a reasonable investigation at a nearby bathing beach or amusement park within the county." 366 U.S. at 428, 81 S.Ct. at 1106 (emphasis added).

While the observation in *McGowan* may be true, it is obvious that business people will find it more difficult to determine whether an otherwise innocent item will be used by another for illegal purposes. *See Bambu Sales, Inc. v. Gibson*, 474 F.Supp. 1297, 1305 n.3 (D.N.J.1979).

The *Tobacco Road* court (see Footnote 1) held the "paraphernalia" seller to a higher standard of knowledge, based on *McGowan*, but most other courts dealing with "drug paraphernalia" laws, including a later one in the same district, have not. In *Music Stop, Inc. v. City of Ferndale*, 488 F.Supp. 390 (E.D.Mich.1980), the court overturned an ordinance virtually identical to that in *Tobacco Road*. In so doing, it did not reject the higher standard *McGowan* established for business people, but instead held that the disputed ordinance—considerably more specific than that passed by West Allis—was too vague because "no fixed extrinsic reference point appears to exist which could be relied upon to alert the potential retailer of ordinary intelligence and prudence, or provide a sliding scale for measurement of primary and secondary design intent." *Music Stop*, 488 F.Supp. at 393. While the *Tobacco Road* and *Music Stop* ordinances described the offending items as "cocaine spoons," "marijuana or hashish pipes" and the like, the West Allis ordinance does not even go that far. Thus, it cannot be seen as giving the would-be seller proper guidance.

In *NORML v. Sendak*, No. TH 75–142–C (S.D.Ind., 2/4/80) (Swygert, Cir. J., presiding), a three–judge court held void for vagueness an ordinance greater in detail than the one under consideration here. Though the case was later declared moot and remanded for dismissal,[2] its words seem equally applicable to this case:

> "It is unclear what is meant by an instrument 'designed' for drug use. The term 'designed' could signify only devices that have no use or function other than as a means to ingest a controlled substance. Alternatively, 'designed' could include any devices that have a legitimate function but could be used for ingestion of drugs. That is, the term 'designed' could sweep into the definition of paraphernalia any device that could be altered from its normal function to become a make-shift drug device, such as a paper clip, tie bar, hand mirror, spoon, or piece of aluminum foil. The definition 'designed for drug use' gives no hint to those attempting to comply with [the ordinance] what is included in the definition.

> "The definition of paraphernalia also fails to answer the question, ' "designed" by whom?' The statute may be limited to instruments designed by the manufacturer for drug use. The crucial problem is that objects arguably within the scope of the statute include many instruments that can be used for legitimate purposes as well as for the ingestion of drugs....

> "... One cannot tell in advance whether a paper clip, hand mirror, teaspoon or corncob pipe will be labeled paraphernalia. Whether an item is paraphernalia will depend on the characterization given by the arresting officer, deputy prosecutor, or judge. In addition to the lack of notice given to those subject to the statute, this broad definition of paraphernalia is not sufficiently explicit to prevent arbitrary or selective enforcement...." *Id.*, at 12–14.

Any potential seller of items that might be selectively termed "instruments" under Or-

---

2. *NORML v. Sendak*, No. 80 1305 (7 Cir., 7/22/80).

dinance No. 4812 will find it difficult to determine whether they will be considered "intended for use" in drug taking. As the *NORML* court stated, "The danger is that intent will be inferred from the mere fact of possession." *Id.* at 15.

■ Most "drug paraphernalia" ordinances share the same basic problem. They attempt to regulate the sale of articles having legal as well as illegal uses. This makes Ordinance No. 4812 overly broad as well as vague. *See Bambu Sales, supra* at 1304.[3] Mere possession is ordinarily not sufficient to raise a presumption of intent to use a thing for an unlawful purpose. *See Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). Even if a person sells lawful goods to someone he knows intends to use them illegally, the seller is not necessarily guilty of a crime. *United States v. Falcone*, 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128 (1940). The act of sale is not enough to prove the seller's intent to engage in the buyer's intended illegal act.[4] Thus, Ordinance No. 4812 threatens the innocent seller of "instruments" with criminal penalties for mere possession, even though the person who intends to use the items unlawfully suffers nothing for his possession.

## II

■ The five factors to be considered in determining whether an item constitutes an "instrument" seem to offer assistance in determining what an item is to be used for and what the seller "intends" its use to be. However, because the definition of "instruments" remains vague and could lead to arbitrary and selective enforcement, the five factors actually offer no way of avoiding the snares of vagueness. Thus, this violation of due process also infringes upon Fourteenth Amendment guarantees of equal protection: the seemingly neutral ordinance aims at stamping out "head shops" while other supposedly reputable establishments may continue to sell the same items.

A careful look at the five factors makes this clear. For example, the first factor—"whether a person or business establishment is a licensed distributor or dealer of tobacco products"—seems designed to spare the corner tobacconist at the "head shop" owner's expense. The third factor—"the total business of a person or business establishment and the types of devices, articles, contrivances or items involved in the business"—supports this interpretation. In other words, if the "total business" of an import boutique meets with the approval of the West Allis mayor or police, it is all right if the store sells a few "instruments" on the side. This sort of selective enforcement occurred in *Music Stop, supra*. There, the City of Ferndale prosecuted a head shop for selling certain pipes while allowing a well-known local tobacconist to sell the same pipes, and for selling electrical clips available at local electrical supply stores. 488 F.Supp. at 392. How many packages of cigaret rolling papers must a store sell before its "total business" is considered that of a "head shop"? The ordinance does not say.

A further violation of equal protection lurks behind the second factor—"expert opinion as to the principal use of the devices, articles or contrivances claimed to be instruments." Obviously, if the ordinance

---

**3.** "This defect is not cured by the fact that it is intended to reach only advertising and sales to minors rather than advertising and sales to adults. In either case, it remains vague and overbroad." *Record Museum v. Lawrence Township*, 481 F.Supp. 768, 775 (D.N.J.1979).

**4.** *See also Sawyer v. Sandstrom*, 615 F.2d 311, 313 (5 Cir. 1980):

"Appellant . . . asks us to decide whether his mere knowing presence at the scene of a suspected crime can be classified as criminal conduct. In essence, appellant questions whether he can be punished for having the wrong kinds of friends and for being with them on a public street. Appellant attacks the constitutionality of the loitering ordinance under which he was convicted, arguing that the ordinance is overbroad and violates his first and fourteenth amendment rights. We agree with appellant's contentions."

*Sawyer* was arrested for possession of drug paraphernalia, but never prosecuted on the charge. Instead, he was charged with loitering, while his companions were arrested for illegal drug use.

does not properly define an "instrument," it would do little good to hire an "expert" to explain the inexplicable. Moreover, owners of small stores, who can least afford the expense, would be required to hire an "expert" just to begin or continue to do business [5]—that is, unless West Allis wishes to require a certain level of expertise for the proprietorship of a novelty shop.

■ Of course, not every classification violates equal protection guarantees. If neither a fundamental right nor a suspect classification is involved, the classification need only be rationally related to a legitimate state interest. Rational distinctions may be made with "substantially less than mathematical exactitude" when the state exercises its police power. *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976). Yet, West Allis has failed to meet this minimal burden. Customers will be able to purchase their paraphernalia at a "legitimate" store simply because that store's "total business" does not appear drug–related.

■ Thus, the ordinance has serious equal protection deficiencies along with the due process violations noted. For these reasons, it is unconstitutional. In addition to the constitutional shortcomings noted, possible First Amendment problems are raised by the ordinance's regulation of sales of drug–related publications and by the consideration of a store's advertising in determining whether an item is an "instrument." These concerns need not be addressed at this time. They can be considered at another time if West Allis goes back to the drawing board and enacts a new ordinance.

Before leaving it should be noted that the ordinance seeks to regulate "simulated" controlled substances and drugs in addition to "instruments." While the kind of judicial surgery employed in *Parma, supra*, (see Footnote 1) might be available to excise the "simulated" aspects of the ordinance from the "instrument" prohibition, the court declines to perform the operation for two reasons: first, the statutory scheme is such that the two are so closely intertwined that severance is difficult; and, second, the heart of the prohibition is aimed at "instruments." When the head is cut off, survival of the remains becomes impossible. Considered as a whole, the entire regulatory provisions of the ordinance must fall.

### III

The court is aware that drug abuse, especially among minors, is a community concern. Efforts to curb drug abuse are to be commended. However, the Constitution forbids the advancement of a permissible goal through impermissible means. It may prove impossible to draft any "head shop" ordinance that passes constitutional muster. The real attack, it would seem, must therefore focus on the sale of drugs, not paraphernalia. In the long run, only education of a community's children and parents can effectively arrest drug abuse. The desirability of being chemically free clearly outweighs that of being chemically dependent. Until this obvious desirability is driven home through education and voluntary abstention, most attempts to control the use of drugs by ordinances such as the one struck down in this case are, it would appear, doomed to failure.

IT IS THEREFORE ORDERED that the City of West Allis be permanently enjoined from enforcing Ordinance No. 4812.

---

5. The Fifth Circuit described the people burdened by such ordinances as "thinly capitalized ... shopowners ..." *High Ol' Times, Inc. v. Busbee*, 621 F.2d 135, 136 (5 Cir. 1980).