OPINION OF THE COURT
Eve Preminger, J.
Plaintiffs seek a preliminary injunction to prevent the enforcement of article 39 of the General Business Law, the so-called “Head Shop Act”, claiming that it violates the Federal and State Constitutions. Defendants oppose the motion for preliminary relief and move to dismiss the action asserting that it is barred by res judicata and that the complaint fails to state a cause of action.
Article 39 of the General Business Law, adapted from the Drug Enforcement Administration’s Model State Drug Paraphernalia Act (the Model Act), prohibits the possession and sale of drug-related paraphernalia. It authorizes the seizure and forfeiture of such goods (§ 852, subd 2) and the revocation of retail licenses and permits (§ 852, subd 1). The statute also authorizes local authorities to file suit to enjoin proscribed activity and provides for penalties ranging from $1,000 to $10,000 upon a finding that a violation has occurred (§ 853).
*883 Plaintiffs are owners of boutiques and novelty stores which also sell certain smoking accessories that they concede could be considered drug paraphernalia. In a prior Federal action, plaintiff Franza joined with one Robert Brache to contest the constitutionality of article 39. Although these plaintiffs were initially successful in obtaining an order declaring the statute unconstitutional (Franza v Carey, 518 F Supp 324), a subsequent appellate decision in a related case put the validity of that decision in question. (Brache v County of Westchester, 658 F2d 47, cert den _ US _, 102 S Ct 1643.)
In Brache, in determining the facial validity of a similar Westchester ordinance, the court divided drug paraphernalia into two major categories: single-use items — those with no possible function other than the preparation or ingestion of drugs — such as free-base kits, cocaine kits, toke-o-matic bong hitters, and marihuana test kits; and multiuse items, such as rolling paper and pipes which concededly have other legal uses. It held that the Westchester ordinance has a “core meaning” (658 F2d, at p 51) that gave plaintiffs fair notice that their sales of single-use items were prohibited. The plaintiffs were therefore barred, under traditional rules of standing (United States v Raines, 362 US 17) from litigating their claims as to multiuse items also sold.
At that time the Franza plaintiffs were selling single and multiuse items. Since the Brache holding would clearly apply to their case, in March of this year plaintiffs and defendants entered into a stipulation vacating the Federal court order and dismissing the action.
As a preliminary matter, this court rejects defendants’ contention that the plaintiffs are barred from litigating claims which were raised or which could have been raised in the prior Federal action. The stipulation in Franza is clearly not a final judgment against plaintiffs on the merits. In fact, the judgment dismissed by the stipulation was a judgment (subject to appeal) in favor of plaintiffs on the merits. Even if the stipulation had not been executed, and the judgment reversed on appeal for lack of standing (Brache v County of Westchester, supra), such a dismissal would also not be a judgment on the merits. Accordingly, *884 plaintiffs are not barred from litigating their claims in this court.
Turning to the substance of plaintiffs’ claims, they first assert that article 39 is void for vagueness. Section 850 of the statute defines “ ‘[d]rug-related paraphernalia’ ” as including those items “used or designed for the purpose of” growing, processing, or ingesting controlled substances (as defined by the Public Health Law). Plaintiffs contend that this definition is impermissibly vague because it forces a seller to guess as to the use or design contemplated by purchasers and manufacturers. Further, plaintiffs assert that article 39’s standard of liability — the intent to sell, offer for sale, or purchase drug-related paraphernalia “under circumstances evincing knowledge that the paraphernalia is possessed, sold or purchased for one or more of the drug-related purposes” (General Business Law, § 851) — would permit a finding of liability upon less than actual knowledge. Plaintiffs claim that such a constructive knowledge standard is constitutionally impermissible.
With respect to violations of the Federal Constitution, these contentions have been considered and rejected by the Supreme Court in Village of Hoffman Estates v Flipside, Hoffman Estates (455 US 489), where the court upheld a drug paraphernalia statute containing similar language against a pre-enforcement attack. The court noted that a statute may be struck on facial vagueness grounds only when “impermissibly vague in all of its applications”(455 US 489, _). Since certain items of drug paraphernalia were clearly proscribed and defined by the statute, the statute was not void for vagueness.
The ordinance in Hoffman (455 US 489, supra) required that the retailer obtain a license to sell “ ‘any items, effect, paraphernalia, accessory or thing which is designed or marketed for use with illegal cannabis or drugs, as defined by the Illinois Revised Statutes’.” The court held (455 US 489,_, supra) that even if the ordinance were construed as quasi-criminal, the “designed or marketed for use” standard was sufficiently clear as: “A business person of ordinary intelligence would understand that this term refers to the design of the manufacturer, not the intent of the *885 retailer or customer. It is also sufficiently clear that items which are principally used for nondrug purposes, such as ordinary pipes, are not ‘designed for use’ with illegal drugs.” While noting that the ordinance and accompanying guidelines contained some ambiguities, the court held that the “designed for use” standard is not vague with respect to at least some of the items sold, such as “roach clips” and colored rolling paper. Moreover, “marketed for use” is a “transparently clear” standard which “describes a retailer’s intentional display and marketing of merchandise.” (455 US, at p —) Since article 39 contains substantially the same language as the Hoffman ordinance, it is clear, that the statute does not violate the Federal Constitution.
No different result is reached when applying the New York State Constitution. Even assuming that New York affords litigants a stricter due process standard (see People v Adams, 53 NY2d 241, 250; People v Settles, 46 NY2d 154, 161), the principle, relied upon in Brache (supra), that if a statute clearly prohibits and defines certain conduct, a facial vagueness claim is defeated, applies with equal force under New York laws. (See, e.g., People v Ferber, 96 Misc 2d 669.)
Article 39 has the same core meaning as the Westchester ordinance analyzed in Brache. It provides fair warning as to certain prohibited items and therefore cannot be struck on facial vagueness grounds. Plaintiffs recognized this by entering into a stipulation dismissing the Federal court order in Franza. Plaintiffs demonstrated their understanding of what was prohibited under the Brache category of single-use items by removing free-base kits, cocaine purification kits, marihuana and cocaine testing kits, “concert kits”, marygins, Marijuana Grower’s Guides and Cocaine User’s Handbooks from sale or display.
Other courts considering similar drug paraphernalia legislation have also rejected facial challenges. These decisions issued prior to Hoffman and Brache, did not discuss coverage of single and multiuse items. Instead, they held that the definitional phrases “designed for use” and “intended for use” applied to the subjective intent of the alleged violator of the statute, and thus provided fair *886 notice. (See, e.g., Franza v Carey, supra;.Brache v County of Westchester, 507 F Supp 566; Casbah, Inc. v Thone, 651 F2d 551; New England Accessories Trade Assn, v Browne, 102 F Supp" 1245; Mid-Atlantic Accessories Trade Assn, v Maryland, 500 F Supp 834; Delaware Accessories Trade Assn, v Gebelein, 497 F Supp 289; World Imports v Wood-bridge Twp., 493 F Supp 428 and Nova Records v Sendak, 504 F Supp 938; see, also, People v Taylor, 70 Misc 2d 970 [upholding Penal .Law, § 220.50, “[cjriminally using drug paraphernalia in the second degree”, against a vagueness challenge]; Penal Law, §§ 140.35 [criminal possession of burglar’s tools], 170.40 [criminal possession of forgery devices], containing “designed for use” language.)[1]
The New Jersey Supreme Court recently held similarly in declaring that: “the phrase ‘used or intended for use’ * * * can refer to any person’s use or intended use. That construction, however, does not create a danger that a defendant can be convicted solely for another’s use or intended use since the substantive offenses, as presently discussed, clearly require scienter of the person charged.” (Town Tobacconist v Kemmelman,_NJ_,__)
Examining article 39 in the same light, I hold that the term “designed for use” applies to the objective physical characteristics of the alleged paraphernalia, that the intent contemplated in the phrase “used or designed for the purpose of” is the subjective intent of the alleged violator, and that “under circumstances evincing knowledge” is not a constructive knowledge provision but requires a finding of actual knowledge. Thus, a court may find an individual in violation only upon a determination that (1) he or she possessed the paraphernalia, (2) he or she intended to sell, offer for sale, or purchase the paraphernalia, and (3) he or she intended to do this for a drug-related purpose (as stated in § 851).
Whatever vagueness there may be in article 39’s definitional sections is mitigated by the specific intent require *887 ment. As applied to single-use items, the statute provides fair warning and enforcement guidelines.
At first glance, subdivision 2 of section 852 poses a more striking constitutional deficiency. It provides: “where any such drug-related paraphernalia shall be taken from the possession of any person, the same shall be surrendered and forfeited to the sheriff of the county wherein the same shall be taken, except that in a city having a population of seventy-five thousand or more, the same shall be surrendered and forfeited to the police force or department of said city and except that in the counties of Nassau and Suffolk, the same shall be surrendered and forfeited to the commissioner of the county police department.” Plaintiffs allege that this provision permits the warrantless seizure and automatic forfeiture of property without pre or postseizure notice or hearing. Denying this claim, defendants allege that subdivision 2 of section 852 must be read together with subdivision 1 of section 852 and section 853 which require an administrative or judicial hearing prior to any forfeiture.
The due process safeguards of the Fourth Amendment require that “seizure, at the very minimum, should be made expressly conditional upon a finding of some form of probable cause that the seller has violated section 851 by selling or offering to sell the particular items seized.” (Franza v Carey, supra, p 343.) That court therefore held that article 39 does not satisfy the requirements of due process since it “neither provides for pre- or post-seizure notice and an adversarial hearing”. (Franza v Carey, 518 F Supp, at p 344.) It noted, however, that “the state courts might interpret this portion of the Statute as requiring a finding of probable cause prior to seizure and either a pre- or post-seizure hearing on the issue of forfeiture.” (518 F Supp, at p 343, n 31.)
This court finds that subdivision 2 of section 852 is readily subject to such a narrowing construction. I agree with the reasoning in New England Accessories Trade Assn, v Browne (502 F Supp 1245, supra) which considered a civil forfeiture provision in Connecticut’s drug paraphernalia statute. There, the court ruled, “the statute neither alters nor dilutes the probable cause finding necessary to *888 validate a search and seizure. The same constitutionally compelled procedures that apply to any search must also be adhered to by the enforcers of this statute.” (502 F Supp, at p 1256.)
Plaintiffs’ assertion that article 39 constitutes the initial New York State attempt at comprehensive regulation in the “drug paraphernalia” field is incorrect. Section 3387 of the Public Health Law, cited by neither side, has been in effect since 1972 and is substantially similar to article 39. The section provides: “[a]ny raw material product, container or equipment of any kind which is used, or intended for use, in manufacturing, distributing, dispensing, or administering a controlled substance in violation of this article shall be seized by any peace officer * * * and forfeited in the same manner as property subject to seizure and forfeiture pursuant to section thirty-three hundred eighty-eight of this article, except that such property shall not be retained for use by any official.” Section 3388 of the Public Health Law has provisions only for postseizure notice and hearing.
In this respect, section 3388 of the Public Health Law is akin to seizure provisions in other New York State statutes, such as section 153 of the Alcoholic Beverage Control Law. See, also, those provisions dealing with cigarettes, pornography, gambling and fireworks (Tax Law, §§ 477, 477-a; Penal Law, arts 410 [seizure and forfeiture of equipment used in promoting pornography], 415 [seizure and forfeiture of vehicles, vessels and aircraft used to transport or conceal gambling records], 405 [licensing and other provisions relating to fireworks]).
I see no reason to apply a different standard to the seizure of drug paraphernalia.[2] As stated in People v Curco Drugs (76 Misc 2d 222,229) “[c]ertainly the State’s interest *889 in regulating the sale of drugs and preventing the illicit sale of narcotics is every bit as weighty as the Federal interest in regulating the sale of guns.”
In accordance with these principles, I construe article 39 as mandating postseizure notice and hearing. As so interpreted, it violates neither the Federal nor State Constitution.
As noted before, plaintiffs have ceased selling or displaying single-use items. They have thereby avoided any standing problems with respect to their challenge to the statute as applied to their-continued sale and display of multiuse items. Brache v County of Westchester, 507 F Supp 566, supra; United States v Raines, 362 US 17, supra.) The question thus remains whether, the statute having been found valid on its face, plaintiffs may obtain a judgment declaring article 39 unconstitutional as applied only to their sales of multiuse items.
A declaratory judgment is appropriate to clarify or settle a dispute as to present or prospective obligations, thus relieving uncertainty and insecurity before the institution of any coercive action. (See, e.g., Walsh v New York State Liq. Auth., 45 Misc 2d 601, affd 23 AD2d 876, affd 16 NY2d 781; Socony-Vacuum Oil Co. v City of New York, 247 App Div 163, affd 272 NY 668.) It is often used to test the facial validity of a statute. (See, e.g., Calderon v City of Buffalo, 90 Misc 2d 1033, affd 61 AD2d 323; Matter of Merced v Fisher, 38 NY2d 557; Boryszewski v Brydges, 37 NY2d 361; Dun & Bradstreet v City of New York, 276 NY 198.) There appears to be no reason why it should not also be used to test the constitutionality of a statute as applied to a specific set of facts, provided that a genuine and ripe controversy exists.
“Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.” (Maryland Cas. Co. v Pacific Coal & Oil Co., 312 US 270, 273; Park *890 Ave. Clinical Hosp. v Kramer, 19 NY2d 958; see, also, CPLR 3001.)
In the instant case, local police officials have visited the boutiques of each plaintiff, warning of imminent enforcement of article 39. Moreover, plaintiffs assert that their heavily publicized status as litigants in prior Federal actions against drug paraphernalia legislation will ensure use of the statute against them. As merchants with a substantial investment in their inventory and the continuation of their business, plaintiffs are entitled to know whether they may continue their present operations.
The court having determined that a declaratory judgment is appropriate, plaintiff must still demonstrate a need for preliminary relief. In evaluating plaintiff’s likelihood of success, I note that no court has ruled on the constitutionality of a drug paraphernalia statute as applied solely to the sale of multiuse items. As discussed previously, courts are in dispute over whether the terms “used”, “designed for use” and “intended for use” fail to give fair warning and proper enforcement guidelines. The Sixth Circuit, for example, reasoned that “the type of object that can become, or be used as, drug paraphernalia is limited only by the imagination of the user.” (Record Revolution No. 6 v City of Parma, 638 F2d 916, 930; see, also, Music Stop v City of Ferndale, 488 F Supp 390.) In a similar vein, the District Court in Indiana Ch., NORML v Sendak (pp 12-14), wrote:
“ ‘designed’ could include any devices that have a legitimate function but could be used for ingestion of drugs. That is, the term ‘designed’ could sweep into the definition of paraphernalia any device that could be altered from its normal function to become a makeshift drug device, such as a paper clip, tie bar, hand mirror, spoon, or piece of aluminum foil * * *
“one cannot tell in advance whether a paper clip, hand mirror, teaspoon or corncob pipe will be labeled paraphernalia. Whether an item is paraphernalia will depend on the characterization given by the arresting officer, deputy prosecutor, or judge”.
Cases to the contrary include Casbah, Inc. v Thone (651 F2d 551, supra); Franza v Carey (518 F Supp 324, supra); *891 New England Accessories Trade Assn, v Browne (502 F Supp 1245 supra); Mid-Atlantic Accessories Trade Assn, v Maryland (500 F Supp 834, supra); Delaware Accessories Trade Assn, v Gebelein (497 F Supp 289, 293, supra), in which the Delaware District Court found relevant the comment from the drafters of the Model Act: “To insure that innocently possessed objects are not classified as drug paraphernalia * * * [the statute] makes the knowledge or criminal intent of the person in control of an object a key element of the definition. Needless to say, inanimate objects are neither ‘good’ nor ‘bad’, neither ‘lawful’ nor ‘unlawful’. Inanimate objects do not commit crimes. But, when an object is controlled by people who use it illegally, or who intended to use it illegally, or who design or adapt it for illegal use, the object can be subject to control, and the people subject to prosecution”.
Without determining which of these conflicting doctrines will ultimately prevail, the need for preliminary relief still exists. An independent reason to retain the status quo is found in plaintiff’s “allegations of financial hardship and the need to avoid forcing an individual to speculate on the scope of a criminal statute”. (Dougal v County of Suffolk, 87 AD2d 897.) In Dougal, the Second Department reversed Special Term’s denial of a preliminary injunction with respect to a similar ordinance because of these factors, while stressing that the court was not expressing an opinion on the merits of plaintiff’s arguments.
The same reasoning applies with equal force to this civil or quasi-criminal statute. The equities here are particularly balanced in plaintiff’s favor as there will be no prejudice to defendants by retaining the status quo. Preliminary relief will not preclude the State from attempting to regulate the sale of drug paraphernalia through section 3387 of the Public Health Law.
Whether article 39 can constitutionally be applied to the sale of the particular multiuse items sold by plaintiffs can only be determined after a full exploration of the factual issues at trial — including, among other things, the nature of each item, its possible legal uses, and the circumstances *892 of sale and display. In view of the injunctive relief, such trial should be held expeditiously.
Accordingly, I hold that article 39 is constitutional under both Federal and State law because it can be validly applied to the sale and display of single-use items, and because I have construed it to mandate postseizure hearing and notice. However, with respect to the sale and display of multiuse items, plaintiffs’ application for the preliminary injunction is granted upon condition that they furnish an undertaking in the amount of $500 within 20 days after the day of entry of this order and upon the further condition that, within 20 days after service of defendants’ answer, plaintiffs file a note of issue whereupon this matter shall be heard as a preferred action.

. Other courts upholding statutes defining drug paraphernalia as “designed for use” and “intended for use” have found that language to apply to the objective physical characteristics of any object, but have nonetheless found that a violation requires specific intent on the part of the accused. (See, e.g., Hoffman Estates, Florida Businessmen for Free Enterprise v City of Hollywood, 673 F2d 1213; Tobacco Accessories & Novelty Craftsmen Merchants Assn, of La. v Treen, 501 F Supp 168, 169-170.)

. In other jurisdictions, every court considering the seizure of drug paraphernalia under Model Act-based legislation has sustained the validity of preseizure warrantless forfeiture. (See New England Accessories Trade Assn, v Browne, 502 F Supp 1245; Casbah, Inc. v Thone, 651 F2d 551; Mid-Atlantic Trade Accessories Assn, v Maryland, 500 F Supp 834.) The Supreme Court has also upheld warrantless administrative searches for the gun and alcoholic beverage industries. (See United States v Biswell, 406 US 311; Colonnade Catering Corp. v United States, 397 US 72; see, also, Donovan v Dewey, 452 US 594.)